United States District Court
Southern District of Texas
**ENTERED**
June 05, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MILDRED BERRY, AS GUARDIAN AND NEXT FRIEND OF TERRELL MICHELLE THOMAS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL CASE NO. H-22-331 |
| UNION PACIFIC RAILROAD COMPANY, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Terrell Michell Thomas, a 56-year-old woman with some cognitive limitations, tried to crawl under a railcar while crossing a rail yard at night. The railcar began to move, crushing her legs, which resulted in their medical amputation. Her guardian and next friend, Mildred Berry, sues Union Pacific for failing to warn Thomas of the train's movement before the accident.

This opinion resolves several pending motions: (1) Berry's motion for leave to amend, (Docket Entry No. 39); (2) Union Pacific's *Daubert* motion to exclude the testimony of Berry's railroad-operations expert, Brandon L. Ogden, (Docket Entry No. 38); (3) Union Pacific's motion for summary judgment, (Docket Entry No. 44); (4) Berry's motion for partial summary judgment on certain elements of her tort claims, (Docket Entry No. 42); and (5) Berry's motion for partial summary judgment on Union Pacific's designation of Berry as a responsible third party, (Docket Entry No. 45).

Based on the record, the parties' briefing, the summary-judgment evidence, and the relevant law, the court denies Berry's motion for leave to amend and grants Union Pacific's motion for summary judgment. The remaining motions are denied as moot. The reasons for these decisions follow.

I.  **Background**

  A.  **Factual Background**

Union Pacific maintains a rail yard at 6800 Kirkpatrick Boulevard in Houston. The rail yard is the site of continuous train operations. The yard houses various facilities, including many sets of railroad tracks, and is roughly a mile long. Some of the tracks converge toward an overpass which straddles the remaining sets of tracks running parallel to Kirkpatrick Boulevard to the west and Parkhurst Drive to the east.

Thomas lives with Berry to the west of the rail yard. On August 13, 2020, Thomas left Berry's home on a bicycle to visit a friend who lived east of the rail yard. Thomas approached the overpass and continued along the part of the paved road that remained at ground level. Thomas then left the road and proceeded along an unpaved road that led to, and ended at, the railroad tracks. The parties dispute whether there was any fencing or signage where the road ended at the railroad tracks. Thomas did not have permission from Union Pacific to enter the rail yard and testified that she had not previously done so. (Docket Entry No. 44-7 (Deposition of Terrell Thomas) at 30:22–31:1). Thomas intended to cut through the rail yard, cross the tracks, and continue travelling on the other side, where another unpaved road led back to the street.

Crossing the yard, Thomas encountered a train with several railcars blocking her path. After pausing for a few minutes, she put down her bicycle and decided to go under one of these cars to continue her journey to the east side of the rail yard. Thomas could not see either the back or the front of the train from where she stood before crawling under the railcar. (Thomas Depo. at 53:22–24). Thomas testified that she did not see any activity at the rail yard before she crawled underneath the railcar. She testified that the yard was not illuminated except for the lights on the train itself, and that there was no noise coming from the train as it began to move. She did not call out or otherwise try to make her presence known before crawling under the railcar, and she was

not wearing any reflective clothing or holding a flashlight. Thomas testified that she was under the railcar for "five or ten minutes" trying to crawl to the other side. (Thomas Depo. at 52:23–53:5). She testified that she did not realize the dangers in crawling underneath a railcar attached to other cars in a train yard. (*Id.* at 53:16–21). She did not know that the train would move and did not realize that the train was moving until it ran over her legs. (*Id.* at 55:10–56:1).

### B.  Procedural Posture

Union Pacific removed in February 2022 and moved to dismiss Berry's original complaint on several grounds. The court granted the motion, without prejudice, on the ground that Berry had failed to allege her authority to bring the suit on Thomas's behalf. (Docket Entry No. 7 at 2). Berry then filed an amended complaint, and Union Pacific again moved to dismiss. The court granted the second motion to dismiss, dismissing with prejudice Berry's premises defect, gross negligence, and negligence per se claims. (Docket Entry No. 21 at 2). The court dismissed without prejudice and with leave to amend Berry's negligence and gross negligence claims for failure to warn. (*Id.*).

In reaching this result, the court agreed with Berry that, accepting as true the allegations that Union Pacific tolerated trespassers into the rail yard and failed to restrict entry into the yard, Thomas entered the yard as a licensee. (*Id.* at 6–7). The railroad as the premises owner has a duty 'not to injure the [licensee] willfully, wantonly, or through gross negligence and to warn of or make safe dangerous conditions known to the possessor of the premises.'" (*Id.* at 7 (quoting *City of El Paso v. Zarate*, 917 S.W.2d 326, 331 (Tex. App.—El Paso 1996, no writ) (citing *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 563 (Tex. 1976)))). But there is no duty to warn of open and obvious dangerous conditions. (*Id.* (citing *Barnes v. Kan. City S. Ry. Co.*, No. H-14-68, 2016 WL 4801511, at *3 (S.D. Tex. Feb. 19, 2016))). The court observed that the railroad tracks and the train's railcars were obvious dangers. (*Id.*). Because Berry provided no authority

3

establishing that a railroad has a duty to erect a fence around its rail yard or warn of the risk that a train might travel over plainly visible railroad tracks, the court dismissed the premises-defect claims. (*Id.*).

Union Pacific moved for summary judgment on the remaining claims in March 2023.

## II. The Rule 56 Standard

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court

must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### III. Analysis

#### A. Berry's Motion for Leave to Amend

Berry moves for leave to file a third amended complaint and replead causes of action that the court previously dismissed. The proposed repleaded claims relate to Union Pacific's alleged failure to maintain a fence around its rail yard or to post signs warning of the danger of moving trains inside the rail yard. (*See* Docket Entry No. 21 at 6–7). The court dismissed those claims because "Berry . . . pointed to no authority that Union Pacific had a duty to provide fencing and signage along its railroad tracks. Railroad tracks are an obvious condition of a railroad, and there is no general duty to warn of their presence because they are an obvious danger." (*Id.* at 7).

Berry argues that Thomas's deposition testimony makes clear that she did not subjectively consider the railroad tracks to be an open and obvious danger before the accident. (Docket Entry No. 39 at 7–8). Berry also points to evidence that, she contends, shows Union Pacific's actual knowledge that there were frequent trespassers in this rail yard. (*Id.* at 8).

5

Thomas's deposition testimony does not lead the court to reconsider its dismissal of the premises defect claims.[1] The court continues to assume that Union Pacific's failure to take more effective steps to prevent trespassers from coming into the rail yard means that Union Pacific granted trespassers an implied license to enter the yard. This license imposes a duty on Union Pacific to warn of dangerous conditions on its property. Nonetheless, a property owner has no duty to warn licensees of open and obvious dangerous conditions on its property, regardless of the licensee's subjective appreciation of those conditions. As stated by the Texas Supreme Court:

> Whether a danger is open and obvious is a question of law determined under an objective test. The question is whether the danger is so open and obvious that as a matter of law [the plaintiff] will be charged with knowledge and appreciation thereof. Under the objective standard, the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances.

*Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021) (internal quotation marks and citations omitted).

Berry submits evidence of Thomas's subjective perception of the lack of danger in crawling under a railroad car in an active rail yard. Thomas's subjective perception does not change the reasoning or the outcome of the court's previous decision. While a premises owner may have a higher duty to warn when it "knows that his licensee's experience and intelligence is likely to prevent [her] from appreciating the risk," RESTATEMENT (SECOND) OF TORTS § 342 cmt. c (1965), the record does not suggest that Union Pacific was aware that Thomas's intelligence and ability to

---

[1] The parties disagree on the legal standard governing Berry's motion. Berry asserts that the court should consider it as a Rule 15 motion to amend her complaint. Union Pacific argues that, because Berry seeks to replead claims previously dismissed, it should be considered a Rule 59 motion to alter or amend the court's previous order. The court need not resolve the parties' dispute over the appropriate legal standard, because Berry's motion must be denied even under the more generous standard of Rule 15.

appreciate the risk were impacted by cognitive limitations.[2] Berry does not contend that other trespassers also possessed only limited appreciation for the danger posed by the railroad tracks,[3] or that Union Pacific knew of both Thomas's trespassing and of her cognitive limitations.

Allowing Berry's amendment would be futile, and futility is a proper basis on which to deny a motion for leave to amend. *Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (amendment is futile if the proposed amendment would fail to state a claim), *cert. denied*, 143 S. Ct. 353 (2022).

The court denies the motion.

### B.     Union Pacific's Motion for Summary Judgment (Docket Entry No. 44)

Union Pacific has moved for summary judgment on Berry's remaining negligence and gross negligence claims. As to negligence, Union Pacific argues that it owed no duty to Thomas and that even if it did owe a duty, there was no breach of that duty. (Docket Entry No. 44 ¶ 10). Union Pacific also argues that it did not proximately cause Thomas's injuries. (*Id.* ¶ 12). Finally, Union Pacific argues that Berry's negligence and gross negligence claims fail for lack of sufficient evidence. (*Id.* ¶ 13).

Berry argues that Union Pacific is wrong to assert that any duty it may have owed to Thomas turns on her status as a trespasser and licensee, because a plaintiff's status as a trespasser or licensee is material only to premises defect, and not negligent activity, claims. A negligent activity claim requires a plaintiff to show that she was "injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.*, 845

---

[2] Thomas has been diagnosed with schizophrenia. (Thomas Depo. at 7:10–12).
[3] To be clear, the court is not making a credibility determination with respect to Thomas's testimony that she did not appreciate the danger posed by her decision to crawl underneath the railcar. Union Pacific does not dispute that Thomas has schizophrenia, which may affect her cognition.

S.W.2d 262, 264 (Tex. 1992) (citations omitted); *see also Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016).

"The lines between negligent activity and premises liability are sometimes unclear." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). In *Del Lago*, the Texas Supreme Court found no error in submitting a case on a premises-defect theory when the alleged "defect" was a bar owner's failure to take action in the face of "verbal altercations and shoving matches between intoxicated bar patrons" before a full-fledged brawl erupted. *Id.* at 764; *see also id.* at 787 (Wainright, J., dissenting) (arguing that the trial court erred in charging the jury on the elements of a premises defect, rather than negligent activity).[4]

"Negligence" in the context of a negligent activity "means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). In the premises-defect context, "negligence" means a violation of the duty owed by a landowner or premises owner, when the particular duty is established by the plaintiff's status as a trespasser, licensee, or invitee. *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

In its motion for summary judgment, Union Pacific cites *Boerjan v. Rodriguez*, 436 S.W.3d 307 (Tex. 2014) (per curiam), to argue that its duties with respect to a negligent activity claim are informed by the status of the plaintiff as a trespasser or licensee. In the *Boerjan* case, "a driver trespassed on a ranch while transporting a family. After being confronted by a ranch employee,

---

[4] The court notes that "premises liability" encompasses both premises-defect and negligent activity claims. *See, e.g.*, *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (a defendant "in control of the premises may be liable for two types of negligence in failing to the keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect"). Courts are sometimes inconsistent in their use of these terms. *See, e.g.*, *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008) (referring to the same legal theory as both "premises condition" and "premises liability" without distinction).

8

the trespassing driver fled at high speed, and the vehicle rolled over, killing the family." *Id.* at 309. The evidence supported the inference that the ranch employer pursued in the family in his own vehicle. *Id.* at 312. The case concerned the death of a family allegedly caused by a car chase, not by a hazard posed by, for example, the condition of the road. The *Boerjan* court recounted that the "only duty the premises owner or occupier owes a trespasser is not to injure him willfully, wantonly, or through gross negligence." *Id.* at 311. It concluded that the evidence did not support an inference of gross negligence, *id.* at 312, and reversed the appellate court, which "ignored this well-established rule." *Id.* at 311.

To support its decision, the court quoted, among other sources, the *Second Restatement of Torts*, which states that a "possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care . . . to carry on his activities so as not to endanger them." *Id.* at 311 n.2 (quoting RESTATEMENT (SECOND) OF TORTS § 333 (1965)). The court noted that this proposition has since been codified in Texas law. *Id.* at 311 n.3 (citing TEX. CIV. PRAC. & REM. CODE § 75.007(b) ("An owner . . . of land does not owe a duty of care to a trespasser on the land and is not liable for any injury to a trespasser on the land, except that an owner . . . owes a duty to refrain from injuring a trespasser willfully, wantonly, or through gross negligence.")).

The *Boerjan* court was confronted with the same argument Berry makes here. The plaintiffs-respondents argued that the "Court of Appeals' opinion considered this dispute a negligent activity, not a premises liability, case and therefore had no reason to discuss premises liability status (invitees, licensees, trespassers, or variants such as known or tolerated trespassers)." Resp'ts. Br. in Opp., 2013 WL 3563156, at *42, No. 12-0838 (Tex. July 9, 2013). In reply, the petitioners quoted from *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006), stating that, "as a general proposition, a landowner is entitled to the exclusive use of his property and is not liable for injury

9

to trespassers caused by his failure to exercise reasonable care to put his land in a safe condition for them, *or to carry on his activities in a manner which does not endanger them.*" *Id.* at 285 (emphasis added) (internal quotation marks and citation omitted).

The Texas Supreme Court's decision in *Boerjan*, although based on very different facts, suggests that Union Pacific is correct that a plaintiff's status as a trespasser, licensee, or invitee is relevant in determining the duty owed by a landowner to a plaintiff in certain situations, even in the context of a negligent activity claim. Although the court did not state this proposition outright, the factual circumstances of the *Boerjan* case and the reasoning in the opinion provide evidence as to how the Texas Supreme Court would analyze the facts presented in this lawsuit.

Berry argues that Thomas's status is not relevant, and that, under Texas law, Union Pacific "had a duty to keep a proper lookout and to use care and caution to find Thomas on the track in time to warn of the oncoming train." (Docket Entry No. 49 ¶ 10). The duty to keep a lookout, Berry argues, "is a continuing one and is not dependent upon the question of whether or not a person may be wrongfully upon the track at a place where persons are not usually expected to be." (*Id.* ¶ 12 (quoting *Tex. & N.O.R. Co. v. Darton*, 241 S.W.2d 181, 182 (Tex. Civ. App. 1951, writ ref'd)).

In *Darton*, the plaintiff was injured by a train on a spur track alongside a cotton warehouse. *Darton*, 241 S.W.2d at 182.

> Darton was employed by the Victoria Compress and Warehouse Company and had gone into one of the box cars of appellant, then standing alongside the loading platform of the warehouse, for the purpose of getting a hand loading truck. He made use of a steel plank extending from the platform to the freight car for this purpose. Upon leaving the car, and while upon the plank, the train containing the box car was moved and appellee fell beneath the wheels of the car and was injured.

*Id.* The court upheld the jury's liability finding. The court reasoned that

> [t]here was a string of cars standing along the compress platform, evidently for some purpose connected with the business of the compress company [which was

> the plaintiff's employer], and a jury could reasonably conclude that it should have been anticipated by the carrier's employees that servants of the compress company might be working in and about the cars and the platform, particularly when a visible steel gangplank was down connecting the compress platform with a box car.

*Id.* The court found that the railroad owed a duty to keep a lookout for the plaintiff and others in his situation. *Id.* The facts in *Darden* are markedly different from this case. There, the railcars were deliberately positioned in relationship to the business of the plaintiff's employer. When the plaintiff was injured, he was standing on a "steel plank extending from the platform to the freight car for [the purpose of retrieving a hand truck]." *Id.* In other words, the train operator had good reason to know that people would be moving between the train and the platform when the operator moved the train without checking to see whether it was safe to do so. Here, on the other hand, Thomas entered the rail yard with no notice to Union Pacific and for no purpose other than to cross the yard to reach the street beyond it. There was no reason for Union Pacific or the train operator to believe that Thomas—or anyone—was lying across the tracks under a railcar when the train began to move. In fact, Thomas was at least partially concealed underneath the railcar. The duty to maintain a lookout for workers whose presence near the train was expected, the issue in *Dayton*, has no relevance to whether there is a duty to maintain a lookout for a person who had crawled under a railcar, out of the train operator's view, and remained under the railcar as the train began to move. There is a fact dispute as to whether the train signaled, through intentional action by its operator or through the audible operations of its brakes and couplings, the fact of its movement. But because the relevant risks were open and obvious, this dispute is not material to the question of Union Pacific's duty. *Dayton* does not compel the holding that Union Pacific owed Thomas a duty of care. And the evidence does not support an inference that the lookout required in *Dayton* would have prevented Thomas's injury.

Berry also cites *Texas & N.O.R. Co. v. Zarate*, 74 S.W.2d 721 (Tex. Civ. App. 1934, writ ref'd). There, the wife of a man struck and killed by a train brought suit for negligence. Although the evidence was circumstantial, it supported "the inference that [the decedent] was killed by defendant's south-bound passenger train." *Id.* at 722. The train engineer testified that he maintained a lookout. The case "was submitted to the jury on one issue of liability, and that was whether or not the operatives of the train were keeping a proper lookout on the occasion in question." *Id.* at 724. The court quoted the applicable rule, as follows:

> The true rule is that it is the duty of the servants of the railroad company operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured, or of the person seeking to recover for such injury, and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a matter of law; but not so in all cases. It results from the above, that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error, whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence, rendering the railroad liable for such damages as resulted therefrom, unless under all the circumstances defendant in error was guilty of negligence contributing proximately to her injury.

*Id.* at 724–25 (quoting *Tex. & P. Ry. Co. v. Watkins*, 29 S.W. 232, 233–34 (Tex. 1895)). The *Watkins* court noted that a plaintiff's status as a trespasser likely precluded liability as a matter of law under the rule of contributory negligence. Although Texas has since abolished the strict rule of contributory negligence, *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 632 (Tex. 1976), Thomas's status as a trespasser or licensee, and the evidence that she was underneath the train and could not have been seen by an operator keeping a lookout for hazards in the path of the train's movement, are relevant to the questions of duty and breach, as shown by *Boerjan*.

12

As with *Darden*, the specific facts of *Zarate* distinguish it from this case. The *Zarate* court observed that that a train operator must keep a lookout for persons on the tracks in front of the train.[5] The court reversed and rendered judgment for the railroad because there was no evidence from which the finder of fact could infer it was more likely than not that the railroad's failure to keep a lookout caused the accident. The duty to keep a lookout for persons in the path of the train is far more limited than the duty the plaintiffs in effect ask this court to impose: the duty to inspect under each railcar before every train movement.

Thomas's status as a trespasser or licensee is relevant to determining the duty of care owed to her by Union Pacific, even in a negligent-activity-theory case.[6] Thomas seeks recovery for an injury suffered from a contemporaneous activity on private property, where the property owner had no knowledge or reason to suspect Thomas's presence, and where the owner's employees owed only limited duties to trespassers or even to licensees.

There is, on the present record, a material dispute of fact as to whether Thomas was a trespasser or licensee as she cut across the rail yard, at night, simply to shorten her distance to her destination. As Berry argues in her motion for leave to amend, one of Union Pacific's yardmasters, Eric Okenkpu, testified that he "report[s] people" trespassing, or the presence of "weird-looking cars" on the yard "probably . . . a hundred times a year." (Docket Entry No. 39-3 (Deposition of Eric Okenkpu) at 35:11–20). There is a factual dispute as to whether Union Pacific took adequate

---

[5] The same duty is expressed in *Gulf, C.& S.F. Ry. Co. v. Russell*, 82 S.W.2d 948, 951 (Tex. Comm'n App. 1935) (a railway company "owes a general duty of keeping a lookout for persons . . . on its track"). *Russell* concerned an accident where a train, proceeding in a straight line for almost two miles before the site of the accident, ran over the hand of the unconscious plaintiff.

[6] This court's previous opinion cited *Sibai v. Wal-Mart, Stores, Inc.*, 986 S.W.2d 702 (Tex. App.—Dallas 1999, no pet.), for the proposition that "[t]he status of the defendant . . . is irrelevant to a negligent activity claim." *Id.* at 706. *Boerjan* suggests that the quoted passage from *Sibai* may be an oversimplification of the law.

13

steps to keep uninvited people out of the yard using a fence and signs and to warn people entering the yard about dangerous conditions they could encounter. There is Texas authority holding that when a landowner knows of frequent trespassers and, despite that knowledge, does not secure his land, trespassers are transformed into gratuitous licensees. (Docket Entry No. 21 at 6–7). The court will therefore consider whether Union Pacific's actions violated any duty of care it may have owed Thomas as a licensee.

A landowner owes a duty to "not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). Union Pacific argues,

> Even if transformed into a licensee, Union Pacific owed Thomas no duty to warn of the obvious dangers presented by crossing a railroad track and crawling underneath an actively moving railcar, and Thomas was sufficiently warned by the tracks, the Train, and the audible and visual warnings coming from the Train.

(Docket Entry No. 44 ¶ 32). The court agrees that Union Pacific did not owe Thomas, a licensee, a duty to warn of the obvious danger of crawling under a railcar unbeknownst to the train's operators or any other person at the rail yard. As the existence of a duty is an essential element of the negligence cause of action, Berry's negligence claim necessarily fails. Additionally, on the record presented, Berry cannot establish that any failure to maintain a "reasonable lookout," *Russell*, 82 S.W.2d at 950, proximately caused her injuries. The duty to maintain such a lookout is, under the cases cited by the parties and discussed above, limited to looking out for those either in the path of the train or those whose presence in that path would be reasonably anticipated by the train operator. Assuming Union Pacific breached that duty, it would not have been sufficient to avoid having the train strike Thomas, who lay partially concealed underneath a railcar from which—as Thomas testified—neither the front nor the rear of the train could be seen.

Finally, because Union Pacific was not negligent, it cannot be held grossly negligent. Berry does not defend her gross negligence claim.

The court grants Union Pacific's motion for summary judgment.

## IV. Conclusion

The court:

1. Denies Berry's motion for leave to amend, (Docket Entry No. 39);

2. Grants Union Pacific's motion for summary judgment, (Docket Entry No. 44); and

3. Denies all remaining motions as moot. (Docket Entry Nos. 38, 42, 45).

Final judgment will be entered by separate order.

SIGNED on June 5, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge